UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANA L. ATKINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:11-cv-01280-DML-TWP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Judicial Review

Plaintiff Diana L. Atkinson applied on October 29, 2007, for Supplemental Security Income disability benefits (SSI) and widow's Disability Insurance Benefits (DIB), alleging that she has been disabled since April 15, 1988. Her husband had died on October 28, 2007, the day before she filed her applications. Two programs of disability benefits are available under the Social Security Act: Supplemental Security Income disability benefits under Title XVI of the Act, 42 U.S.C. 1381 *et seq.*, for uninsured persons who meet income and resources criteria, and Disability Insurance Benefits under Title II of the Act, 42 U.S.C. § 401 *et seq.*, for persons (or, under certain circumstances as described in 42 U.S.C. § 402(e), the widows or widowers of deceased persons) who have achieved insured status through employment and withheld premiums.

Mrs. Atkinson's applications were denied on initial review and on reconsideration, and she requested an administrative hearing. Acting for the

Commissioner of the Social Security Administration, an administrative law judge ("ALJ"), after a hearing held April 15, 2010, determined that Mrs. Atkinson is capable of performing work at a medium level of exertion. Relying on the testimony of a vocational expert, the ALJ found, at step five, that Mrs. Atkinson's residual functional capacity ("RFC") permits her to work as a kitchen helper, line worker, and caretaker, jobs that exist in significant numbers in Indiana and nationally. Accordingly, the ALJ found that Mrs. Atkinson is not disabled.

The national Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision for the Commissioner final. Mrs. Atkinson filed this civil action for judicial review under 42 U.S.C. § 405(g), which governs judicial review of the Commissioner's final decision for DIB and SSI claims. The parties consented to this magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Mrs. Atkinson asks the court to reverse the ALJ's decision and award benefits, or to remand for further proceedings, on the grounds that the ALJ's determination that she is capable of medium-level work is not supported by substantial evidence. She attacks the ALJ's criticism of her failure to quit smoking, the ALJ's failure to include in the RFC a requirement that Mrs. Atkinson keep her feet elevated above waist level (which would preclude any work), and the ALJ's comparison of Mrs. Atkinson's ability to care at home for her aging, sick husbands and the performance of competitive employment at a medium level of work.

For the reasons discussed below, the court finds that the ALJ's determination is based on a reasonable evaluation of the evidence in the record, which the court may not disturb under the appropriate standard of review. Accordingly, the Commissioner's decision is AFFIRMED.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A)[1]. Mrs. Atkinson is disabled if her impairments are of such severity that she cannot perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's

---

[1] The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, the statutory provisions of Title XVI are materially identical to those under Title II. The regulations governing DIB are found at 20 C.F.R. §§ 404.900-.999 and 20 C.F.R. §§ 404.1500-.1599. The parallel SSI regulations appear at 20 C.F.R. §§ 416.1400-1499 (corresponding to 404.900-.999) and 20 C.F.R. §§ 416.900-.999 (corresponding to 404.1500-.1599).

impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."   20 C.F.R. § 404.1520(c).  The third step is an analysis about whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes a set of medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

       If the claimant's impairments do not satisfy a listing, then her RFC is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.  The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant

4

numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of

law, *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). If she concludes that benefits should be denied, she must connect the evidence to her findings and conclusions and explain her analysis with enough detail and clarity to permit meaningful review. *Arnett,* 676 F.3d at 592; *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008).

## The ALJ's Findings

Mrs. Atkinson was born in August 1957, was 30 years old at the time of the alleged onset of disability on April 15, 1988, and was 52 years old at the time of the ALJ's decision on May 7, 2010. The ALJ found that she met all the non-disability requirements for seeking widow's disability benefits. Mrs. Atkinson finished high school and then took accounting classes for two years. She has a sporadic work history resulting from, according to Mrs. Atkinson, physical impairments and the need to care for ailing husbands who died in 1998 and in 2007. (R. 58). At step one, the ALJ found that Mrs. Atkinson had not engaged in substantial gainful activity since her alleged onset date of disability in 1988. (R. 55). At step two, she found

6

that Mrs. Atkinson suffers from numerous severe impairments: history of peripheral vascular disease with stent placement in the femoral arteries, history of epilepsy, asthma, arthritis, gastroesophageal reflux disease (GERD), hyperlipidemia (generally high cholesterol or triglyceride levels), obesity, and tobacco abuse. (R. 56). She determined that Ms. Atkinson's depression was not a severe impairment. The ALJ found, at step three, that none of Mrs. Atkinson's impairments met or medically equaled a listing. Mrs. Atkinson does not challenge the ALJ's analyses at steps one through three.

For purposes of steps four and five, the ALJ determined that Mrs. Atkinson can perform medium work as defined in 20 C.F.R. § 404.1567(c) (DIB) and 20 C.F.R. § 416.967(c) (SSI), with certain restrictions. These regulations define medium work as requiring the physical ability to (1) stand or walk a "good deal" of the work day or, if the position is more sedentary, to spend most of the time pushing and pulling arm or leg controls; (2) lift 50 pounds at a time; and (3) frequently lift or carry objects weighing up to 25 pounds. The ALJ restricted Mrs. Atkinson from (a) concentrated exposure to fumes, odors, dust, gases, and poor ventilation, (b) exposure to machinery and heights; and (c) jobs requiring the climbing of ladders, ropes, or scaffolds. She found that Mrs. Atkinson had no restrictions for ramp or stair climbing, or balancing, stooping, kneeling, crouching, and crawling; she could perform these postural activities on a frequent basis. (R. 58).

Mrs. Atkinson had no past relevant work, so the ALJ moved to step five to determine whether based on her age, work experience, education, and functional

capacity, there were jobs available in sufficient numbers in the economy that Mrs. Atkinson can do. The ALJ adopted an opinion by a VE that, with Mrs. Atkinson's functional capacity, jobs as a kitchen helper, line worker, and caretaker are available. Accordingly, the ALJ found that Mrs. Atkinson was not disabled at any time between 1988 through the date of her decision.

## Analysis

Mrs. Atkinson has a history of peripheral vascular disease, a "condition of the blood vessels that leads to narrowing and hardening of the arteries that supply the legs and feet." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001223 (last visited March 11, 2013). This disease had been treated by the insertion of two stents into the femoral arteries of her left leg around 2006 and the insertion of one stent into the femoral artery of her right leg around 2008. Mrs. Atkinson testified that this disease causes numbness in her left leg, and leaves her "unable to stand, or sit, or do anything." (R. 28). She testified that she spends her day either watching television and sitting in a recliner or playing a bingo game on a computer while she keeps her feet up on a footstool. Mrs. Atkinson said that after her first surgery, the physician at the VA hospital where her surgery was performed told her to keep her feet elevated at waist level as much as possible, and that is why she sits in a recliner all day long. (R. 18-19). She further asserted that in her daily living, she does nearly nothing requiring physical exertion, although she can bathe herself using a chair in the shower. She lifts nothing, doesn't cook, doesn't clean, and relies completely on her companion with whom she lives. (R. 25-27). According to Mrs.

Atkinson, at least some of this lack of activity is motivated by her fear that she will suffer an asthma attack or seizure (R. 24, 35). She also testified, however, that she has had no problems with these matters in a very long time, that they are controlled with medication, and that they "aren't real serious problems." (R. 14-16).

The ALJ did not accept that Mrs. Atkinson's medical impairments limit her functioning as Mrs. Atkinson described and, based on the evidence, determined that Mrs. Atkinson's RFC allows a medium level of work. Mrs. Atkinson asserts that the ALJ's decision is not supported by substantial evidence because of three alleged errors: (1) the ALJ's criticism of Mrs. Atkinson's non-cessation of smoking without a finding that cessation would improve Mrs. Atkinson's condition and allow her to work; (2) the ALJ's failure to explain specifically her rejection of Mrs. Atkinson's need to elevate her feet to waist level; and (3) the ALJ's comparison of Mrs. Atkinson's care of her sick husbands with medium level functioning in a competitive work environment. The first two of these asserted errors relate to the ALJ's assessment of Mrs. Atkinson's credibility, and the court will first address the ALJ's credibility findings, including the comments regarding Mrs. Atkinson's smoking and feet elevation. The court will then discuss whether substantial evidence supports the ALJ's finding that Mrs. Atkinson is capable of working at a medium level of exertion.

I.   **The ALJ's determination that Mrs. Atkinson was not credible is supported by substantial evidence.**

An ALJ is required to consider a claimant's statements about her symptoms and the limitations because of her medical impairments and how they affect her

daily life and ability to work, 20 C.F.R. § 404.1529(a), but is not required to accept the claimant's statements blindly. *Rucker v. Chater,* 92 F.3d 492, 496 (7th Cir. 1996). The ALJ must consider the claimant's statements in light of objective medical evidence and other pertinent evidence, including daily living activities, medication, and treatment. *Brindisi v. Barnhart,* 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making a credibility determination by articulating the reasons behind the determination). The ALJ's assessment of Mrs. Atkinson's credibility is entitled to deference from this court, and is not grounds for reversal and remand unless "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008) (ALJ is in best position to evaluate a claimant's credibility and her determination will not be set aside unless patently wrong).

### A. The ALJ cited numerous grounds for doubting Mrs. Atkinson's credibility.

The ALJ did not accept as credible Mrs. Atkinson's descriptions of the severity and limiting effects of her peripheral vascular disease. As to her asthma, history of seizures, and other physical impairments, the ALJ found that they are well controlled by medication and do not require special functional limitations (except for a work environment free of concentrated exposure to gases, dust, and fumes), a finding that Mrs. Atkinson does not contend was erroneous.

The ALJ found that Mrs. Atkinson has done far more demanding physical activity than Mrs. Atkinson described at the hearing. She cited a report by the Social Security Administration of an in-person interview of Mrs. Atkinson on October 29, 2007, that observed Mrs. Atkinson had no difficulties with sitting,

10

standing, walking, or using her hands. (R. 181-184). She cited documentation supplied by Mrs. Atkinson in 2007 and 2008 as part of the administrative process in which Mrs. Atkinson or her companion stated that she can make a bed, cook, dust, and do laundry although at a "slower" pace than normal, and that she prepares meals daily, does dishes, cleans bathrooms and bedrooms, and takes care of pets. (R. 194-210). The ALJ also stressed that Mrs. Atkinson had been the caretaker for two ailing husbands, one who died in 1998 and the other in 2007, and Mrs. Atkinson said the reason—in addition to leg pain—she had not worked since 1988 was because these men were sick enough that they could not be left alone and needed her care. Because, as the ALJ found, there was no indication that Mrs. Atkinson's condition had deteriorated over time, it was reasonable for the ALJ to decide that the functional limitations described by Mrs. Atkinson at the hearing were not worthy of belief.

In criticizing Mrs. Atkinson's credibility, the ALJ also documented the lack of objective medical support for the functional limits Mrs. Atkinson described. She noted that Mrs. Atkinson had complained to the state-agency physician at her consultative examination in January 2008 of numbness in her leg, but that at a medical appointment in April 2008, she denied "any numbness, weakness, sudden headaches, blurred vision, chest pain, shortness of breath" and stated she would "go to the ER if these occur." (R. 60). The ALJ found that there were no treatment records mentioning numbness after January 2008, suggesting that either any

11

numbness had resolved or it had not been as severe as Mrs. Atkinson had alleged. That reasoning is not illogical.

The ALJ also mentioned a number of ways in which Mrs. Atkinson had not complied with treatment directives. They included her failure to respond to multiple telephone calls from doctors' offices, violation of an agreement to cease taking illicit drugs, and failure to stop smoking or refusal to use aids to stop smoking. (R. 61).

### B. The ALJ's comments regarding Mrs. Atkinson's failure to stop smoking or use aids to stop smoking do not warrant remand.

Mrs. Atkinson challenges as an error warranting remand the ALJ's criticism of her failure to stop smoking, relying on SSA regulation 20 C.F.R. § 404.1530. That regulation prohibits an ALJ from finding a claimant is disabled if a claimant refuses prescribed treatment without a good reason and if the prescribed treatment would restore the claimant's ability to work. *Shramek v. Apfel,* 226 F.3d 809, 812 (7th Cir. 2000) (where ALJ denies benefits because the claimant refused to undergo treatment, it must be supported by a finding that if the treatment were followed, the claimant could return to work). But contrary to Mrs. Atkinson's argument, 20 C.F.R. § 404.1530 does not govern the ALJ's credibility determination or forbid an ALJ from deciding that a claimant's refusal to follow recommended treatment harms her credibility.

The ALJ did not rule that Mrs. Atkinson was not disabled because she would not stop smoking. Rather, the ALJ listed that failure as one of several instances in which Mrs. Atkinson had not followed through on treatment recommended by her

12

doctors. The authority cited by Mrs. Atkinson, *Rousey v. Heckler,* 771 F.2d 1065 (7th Cir. 1985), discusses the distinction between an ALJ's decision that a claimant is not disabled at all because she refused treatment and a decision that a claimant's credibility regarding her symptoms is compromised by her refusal to seek treatment. If the former, the ALJ must make a finding that the claimant will not be disabled if she undergoes the prescribed treatment. If the latter—a credibility analysis—the ALJ's reasoning must only be logical. *Id.* at 1069-70. There is a logical link here between the ALJ's determination that Mrs. Atkinson overstates her limitations (such as being afraid that she'll suffer an asthma attack or seizure) and her failure, generally, to follow medical advice, including declining "smoking aids on numerous occasions." The ALJ merely referred to Mrs. Atkinson's continuing to smoke in the face of consistent medical advice otherwise as one of many reasons for doubting Mrs. Atkinson's credibility. That reference does not convince the court that the credibility determination was patently wrong.

### C. The ALJ's failure to include a restriction for feet elevation is not grounds for remand.

Mrs. Atkinson also assigns as error the ALJ's failure to incorporate into the RFC Mrs. Atkinson's need to elevate her feet above waist level or to contact Mrs. Atkinson's doctor about such a restriction. The ALJ mentioned Mrs. Atkinson's testimony that she elevates her feet above waist level and uses a recliner (R. 59), but found that Mrs. Atkinson's reports of her limited daily activities "raise questions of credibility given the objective medical [record]" is not supportive. *Id.* Obviously disbelieving the medical necessity of Ms. Atkinson keeping her legs

13

elevated, the ALJ did not incorporate this restriction into the RFC. The only evidence of such a limitation was Mrs. Atkinson's testimony that when she had surgery on her leg, the doctor at the VA hospital told her to elevate her feet at waist level as much as possible. Mrs. Atkinson contends that this testimony alone was enough to require the ALJ (a) to analyze the rejection of Mrs. Atkinson's statement, apart from the ALJ's generalized negative assessment of her credibility and (b) to contact Mrs. Atkinson's doctor to provide more information about a need for Mrs. Atkinson to elevate her feet. Under the circumstances of this case—where there is no indication that Mrs. Atkinson was under a doctor's orders generally to keep her feet elevated—the court disagrees.

    Mrs. Atkinson's testimony was that the doctor's oral discussion about keeping her feet elevated—which is not memorialized or suggested in any medical record—occurred following her leg surgery. The record does not indicate that the doctor prescribed feet elevation as a limitation for everyday life divorced from post-operative rehabilitation. There is no mention in any medical record that any doctor believes Mrs. Atkinson should, as a matter of normal course, keep her feet elevated, or ever told her that. *See Cartwright v. Barnhart,* 205 Fed. Appx. 450 (7th Cir. 2006) (rejecting asserted error in ALJ's failure to credit statement that the claimant must elevate her feet to reduce swelling when there was no medical record demonstrating a doctor's recommendation that feet be elevated, let alone a record demonstrating that elevation was required); *Sienkiewicz v. Barnhart,* 409 F.3d 798, 804 (7th Cir. 2005) (discrepancy between a degree of limitation reported by the

14

claimant and "that suggested by medical records is probative of exaggeration"); *Schmidt v. Astrue,* 496 F.3d 833, 846 (7th Cir. 2007) (ALJ's RFC need incorporate only "impairments and limitations that he accepts as credible").

The court does not agree with Mrs. Atkinson that the ALJ was required to contact the doctor at the VA regarding this issue when Mrs. Atkinson's testimony reasonably may be viewed to mean no more than that elevating her feet was advice given to her for post-operative care.  As the ALJ well supported in her findings, Mrs. Atkinson had consistently engaged in physical activities inconsistent with keeping her feet nearly constantly elevated.  Mrs. Atkinson's reported daily living activities while she was caring for her sick husbands (cooking, housework, washing dishes, making beds, cleaning bathrooms) do not square with her hearing testimony that physical infirmities require her to keep her feet elevated all day.

In sum, and given the substantial deference the court owes to the ALJ's credibility finding, the court does not find error in the ALJ's failure to include in the RFC a requirement that Mrs. Atkinson keep her legs elevated.

## II.     The ALJ's decision that Mrs. Atkinson is capable of medium work is supported by substantial evidence.

Mrs. Atkinson's remaining point of error concerns the ALJ's discussion that Mrs. Atkinson's care for her husbands is the type of work that a person does at a medium level of exertion, and is therefore supportive of the RFC.  Mrs. Atkinson relies on cases from the Seventh Circuit cautioning ALJs from placing too much emphasis on a person's daily living activities in formulating an appropriate RFC. The court of appeals has noted that a person can do activities at home generally at

15

her own pace and with many rest breaks and that it can therefore be unfair to conclude from the types of activities a person engages in the home environment that the person can perform those same activities on a sustained basis for eight hours a day and five days a week.  *Craft v. Astrue,* 539 F.3d 668, 680 (7th Cir. 2008) (internal quotation omitted) (cautioning the "Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home"); *Carradine v. Barnhart,* 360 F.3d 751, 756-57 (7th Cir. 2004) (it does not follow from claimant's ability sporadically to engage in physical activities in her daily life that she can perform those activities "eight hours a day five consecutive days of the week").

The ALJ's decision does not, however, reveal that she placed undue reliance on Mrs. Atkinson's abilities to care for her husbands in deciding that Mrs. Atkinson is capable of medium level work.  The ALJ examined Mrs. Atkinson's daily living activities, including those that would have been required to care for her sick husbands, in light of and in contrast with Mrs. Atkinson's suggestion that her physical impairments kept her from working at all.  Although the ALJ also mentioned Mrs. Atkinson's caregiver role as supportive of her finding that Mrs. Atkinson is capable of medium-level work, the ALJ's RFC appears to have principally relied (though not solely) on the objective medical evidence and the opinion of a state agency doctor regarding her ability to perform medium-level work.

In deciding that Mrs. Atkinson is capable of work requiring a medium level of exertion, the ALJ stressed that she was giving great weight to the opinion of a

state-agency reviewing physician, based on the medical evidence in the record, that Mrs. Atkinson is capable of medium-level work. She also relied on the results of Mrs. Atkinson's physical examinations and the lack of objective medical evidence suggestive of a lower level of work activity. Mrs. Atkinson points to no error in the ALJ's reliance on this evidence. That evidence is enough to sustain the ALJ's decision.

## Conclusion

The standard of review is very narrow. The residual functional capacity determined by the ALJ is supported by substantial evidence and is not infected by legal errors or serious misstatements of facts. With that RFC and based on the testimony of the vocational expert, it was reasonable for the ALJ to determine that there are jobs in sufficient numbers in the national economy that Mrs. Atkinson can perform. Accordingly, the Commissioner's decision is AFFIRMED.

So ORDERED.

Date: 03/14/2013

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system